# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

ADIP J. TADROS &
NORMA TADROS,                          :

                                       :

       Plaintiffs,            :

                                       :

    vs.                              :

CITY OF UNION CITY; MAYOR              :
BRIAN P. STACK; JOHN MEDINA;           :    **CIVIL RICO COMPLAINT &**
MARTIN MARTINETTI; FRANCO              :
ZANDARDELLI; LUCIO FERNANDEZ;          :    **CIVIL RIGHT COMPLAINT**
CHRISTOPHER IZIZARRY; TILO E.          :
RIVAS;MARYUBY BOMBINO; ANDRES          :    **CIVIL NO. 10-2535 (DMC)**
GARCIA; MIGUEL ORTIZ; VICTOR           :
MERCADO; VINCENT CARUSO;               :
CARLOS VELLEJO; VICTOR GRULLON;        :
MARGARITA GUTIERREZ; DENIS             :
VELEZ; C. VALBIVIA; THE STATE          :
OF NEW JERSEY; EMPIRETECH              :
CONSULTING ASSOC. INC.,                :
EMPIRETECH CONSTRUCTION ASSOC.         :
INC., SHERIF H. EL-FAR,P.E.            :
CONNIE YOUNIS; JOSE IZQUIERDO;         :
JAI, ARCHITECTS LLC., ABBAS            :
A. SHAH; RONALD ABRAHAM,ESQ.           :
GREGG F. PASTER,ESQ.,                  :    **TRIAL BY JURY DEMAND**
WILFREDO J. ORTIZ II, ESQ.,            :
J.D.P CONSTRUCTION SERVICES            :
INC., JUAN DE LA PAZ; JAY B.           :
ZUCKER, ESQ., ROSE RUBITO              :
ESQ., DAVID M. WATKINS, ESQ.,          :
54 INC., ORTIZ AND PASTER              :
LAW OFFICES; JAY B. ZUCKER &           :
KWESTEL,LLP., AND JOHN DOES            :
ET.AL.                                 :

                                       :

       Defendants.            :

                                       :

(i)

# T A B L E   O F   C O N T E N T S

| | | P A G E  No |
|---|---|---|
| I. | Complaint | 2 |
| II. | Jurisdictio & Venue | 2 |
| III. | Timeleness Of Action | 3 |
| IV. | Parties To This Action | 3 to 12 |
| V. | Statement Of Facts | 13 to 43 |
| IV. | Defendants Liability For Violation Of The Racketeer Influneced And Corrupt Organization Which Consist of Count One and Two. | 44 to 56 |

## Counts Of Violation:

Count Three  State Rico.............................. 57
Count Four State Rico Conspiracy...................... 58
Count Five Defendants' Liability For Violation of State Consumer Protection Statutes.................... 59, 60
Count Six Violation of §1983 Civil Rights And Bivens Claim......................................... 61, 62
Count Seven Conspiracy toViolate §1985................ 63
Count Eight Tort Claim Under NJ Tort Act.............. 64,65
Count Nine Billing Fraud.............................. 66
Count Ten Theft By Conversion......................... 67
Count Eleven Unjust Enrichment........................ 68,69
Count Twelve Common Law Fraud......................... 70
Count Thirteen Conspiracy to Commit Common Law Fraud....71, 72
Count Fourteen Negligence Misrepresentations.......... 73
Count Fifteen Breach of Fiduciary Duties.............. 74,75
Count Sixteen Breach Of Fiduciary Duty Of Care as to Jay B. Zucker, 54 Inc., Zucker & Kwestel......... 76,77,78
Count Seventeen CommercialBribery..................... 79
Count Eighteen Violation of Truth Lendind Act......... 80,81
Count Nineteen Legal Malpractice...................... 82,83
Count Twenty Violation Equal Right Protection......... 84

## I. C O M P L A I N T

The Plaintiffs, **Adip Tadros, Norma Tadros, and Gensis, One Inc.,** acting Pro Se, file this Civil Right Action under Title 42 U.S.C. §1983, §1985, et.Seq and the Civil Provisions of Chapter 96 of Title 18 U.S.C. §1961 through §1968, entitled Racketeer Influnced and Corrupt Organizations "RICO", and Rico Conspiracy, Extortion under Title 18 U.S.C. §1951(a)(b)(2); Mail Fraud under Title 18 U.S.C. §1341, Blackmail; Threats; Fraud in the Inducement; Negligent Misrepresentation; Aiding and Abetting Defamations of Character; State Rico, and Sate Rico Conspiracy, Common Law Fraud; Conspiracy to Commit Common law Fraud; Billing Fraud; Fraudulent concealment; Theft by Conversion; Commercial Bribery; Due Process violation; Unjust Enrichment, Defective and Improper Design; Gross Negligence; Legal Malpractice; and Tortious Interferance with Economic Advantage.

## II. J U R I S D I C T I O N   &   V E N U E

This Court has Original and exclusive Jurisdiction over Rico Claims stated in this Complaint; 18 U.S.C. §1962-64 of the Racketeer Influenced and Corrupt Organization Act "RICO" and under Title 28 U.S.C. §1331, §1332, and under Title 42 U.S.C. §1983, §1985. The plaintiffs also invokes the pendent jurisdiction of this Court wherefore jurisdiction and venue is proper in this district.

-2-

## III. T I M E L E N E S S   O F   A C T I O N

This action is timely under the RICO Claims stated herein this Complaint; the last predicate acts of the defendants and their coconspirators is within the Statute of limitation under New Jersey law six years NJSA 2A:14:1 and Plaintiffs invoke the Equitable tolling doctrine due to defendants active misleading, and the fraudulent concealment they committed against the plaintiffs. The extraordinary circumstances in this case are present and warrant the tolling of State and Federal tolling doctrines.

## IV. P A R T I E S   T O   T H I S   A C T I O N

1.    Plaintiff Adip Tadros, is the principle owner and plaintiff in this cause of action. He resides at 146 Union Avenue, Rutherford, New Jersey 07070, at all times relevant to this complaint.

2.    Plaintiff Norma Tadros, is the wife of Adip Tadros, and reside with her husband Adip Tadros at 146 Union Avenue, Rutherford, NJ 07070, at all times relevant to this complaint.

3.    Plaintiff Gensis One Inc,. is an entity was created under the laws of the State of New Jersey to facilitate the business of Real Estate and was the owner of the subject property in this action which was 1208-10 Summit Avenue, in the city of Union City at all times relevant to this complaint.

-3-

4.    Defendant City Of Union City, in the State of New Jersey is the governing body within the boundary and Zoning Ordinance, Police Department, Building Department, Public Affairs, Public Property, Public Works, Revenue and Finance, Zoning Board of Adjustment, at all time material to this Complaint, its being sued in its Official Capacity and Personal capacity. Its place of business located at 3715 Palisade Avenue in Union City, New Jersey 07087.

5.    Defendant Brian P. Stack, is the Mayor of Union City, he is the Chief in comand and decision maker within the city of Union City, at all times material to this Complaint, he is sued in his individual capacity and official capacity as the Mayor of Union City located at 3715 Palisade Avenue, Union City New Jersey 07087.

6.    Defendant Union City Chief of Police, is the comander and chief of all security and law enforcement personal, at all times material to this complaint he is sued in his individual capacity and official capacity.

7.    Defendant John Medina, he was a former zoning board member in Union City, *1 at all times material to this complaint and being sued in his individual and official capacity, reside at 1601 74th Street, North Bergen New Jersey 07047.

---

*1 JOHN MEDINA WAS CHARGED WITH EXTORTION CHARGES AND PLEADED GUILTY IN DECEMBER OF 2008, IN THE DISTRICT OF NEW JERSEY BEFORE THE HONORABLE GARRETT E. BROWN, JR U.S.D.J. MEDINA, CONTINUE TO COOPERATE WITH THE FBI;

-4-

8.    Defendant Martin Martinetti, is the Construction official in the City of Union City, his primary duty to approve and review all building permits to be issued within the City of Union City, at all times relevant to this complaint, he is sued in his individual capacity and official capacity, his office located at 3715 Palisade Avenue, Union City,New Jersey 07087.

9.    Defendant Franco Zandardelli, is a zoning board member in Union City, his duty to review and vote on approvals of certain application for zoning problems within the City of Union City, at all times material to this complaint, he is sued in his individual capacity and official capacity his office located at 3715 Palisade Avenue Union City, New Jersey 07087.

10.    Defendant Lucio Fernandez, is the Commissioner of Public Affairs in the City of Union City, he votes on projects approvals and at all times material to this Complaint, he is sued in his individual capacity and official capacity, place of business is 3715 Palisade Avenue Union City, New Jersey 07087.

11.    Defendant Christopher Izizarry, is the Commissionsr of Department of Public Property, in Union City, he involved in the voting process on zoning issues, at all times material to this complaint, he is sued in his individual capacity and official capacity, his place of business at 3715 Palisade Avene, City of Union City 07087

-5-

12.    Defendant Tilo E. Rivas, is the Commissioner of Department of Public works, in the City of Union City, he votes on zoning and board of adjustment projects, at all times material to this complaint, he is sued in his individual capacity and official capacity, located at 3715 Palisade Avenue Union City, New Jersey 07087.

13.    Defendant Maryury Bombino, is the Commissioner of Revenue and Finance, in the City of Union  City, at all times material to this Complaint, she is sued in her individual capacity and official capacity, she is located at 3715 Palisade Avenue Union City, New Jersey 07087.

14.    Defendant Andres Garcia, is a member of the zoning board of adjustment, in the City of Union City, at all times material to this complaint, she is sued in her individual capacity and official capacity, his place of business at 3715 Palisade Avenue, Union City, New Jersey 07087.

15.    Defendant Miguel Ortiz, is a member of the zoning board of adjustment in the City of Union City, at all times material to this Complaint, he is sued in his individual capacity and official capacity, located at 3715 Palisade Avenue Union City, New Jersey 07087.

16.    Defendant Victor Grullon, is a member of the zoning board of adjustment in the City of Union City, at all times material to this complaint he is sued in his individual capacity and official capacity with place of business at 3715 Palisade Avenue Union City, New Jersey 07087.

-6-

17.   Defendant Margarita Gutierrez, is a member of Union City zoning board of adjustment, at all times material to this complaint she is sued in her individual capacity and official capacity, located at 3715 Palisade Avenue Union City NJ 07087.

18.   Defendant Denise Velez, is a member of Union City Zoning Board of Adjustment, at all times material to this complaint she is sued in her individual capacity and official capacity located at 3715 Palisade Avenue Union City New Jersey 07087.

19.   Defendant C. Valbivia, is a Union City zoning Board of adjustment at all times material to this complaint she is sued in her individual capacity and official capacity located at 3715 Palisade Avenue  Union City, New Jersey 07087.

20.   Defendant Justin Mercado is a member of Union City Zoning Board of Adjustment at all times material to this complaint he is sued in his individual capacity, located at 3715 Palisade Avenue Union City, New Jersey 07087.

21.   Defendant Vincent Caruso, is a member of Union City Zoning Board of Adjustment at all times material to this complaint he is sued in his individual capacity and official capacity, located at 3715 Palisade Avenue Union City 07087.

22.   Defendant Carlos Vellejo, is a member of Union City Zoning Board of Adjustment he is sued in his individual capacity and official capacity at all times material to this complaint located at 3715 Palisade Avenue Union City New Jersey 07087.

-7-

23.    Defendant The State of New Jersey, is the controlling body and governing body of the City of Union City and its employees and agents, and its responsible for all its towns & municipalaties , at all time material to this complaint its being sued by way of tort under the NJ Tort Act, place of business is through Office of the Attorney General, Department of Law and Public Safety, 25 Market Street P.O.Box 116 Trenton, New Jersey 08625.

24.    Defendant Empiretech Consulting Associate Inc., was the principle contractor to perform certain designs and building on 1208-1210 Summit Avenue Union City, New Jersey, Empiretech, is an entity created under the laws of the State of New Jersey to facilitate business as a consulting engineering firm, at all times material to this complaint its being sued in it official capacity, its place of business 1713 Bergenline Avenue, Union City New Jersey 07087.

25.    Defendant Empiretech Construction Associate Inc., is an entity created under the laws of the State of New Jersey to facilitate business in the construction industry, at all time material to this complaint its being sued in its official business capacity its place of business 1713 Bergenline Avenue Union City, New Jersey 07087.

26.   Defendant Abbas A. Shah, is a licensed architect in the State of New Jersey to facilitate business in the architectural business at all time  material to this complaint he is sued in his individual capacity and official capacity, located at 1713 Bergenline Avenue in Union City, NJ 07087

27.   Defendant Connie Younis, was the Vice President of Empiretech Consulting Inc, and Empiretech Construction Inc, at all times material to this complait she is sued in her individual capacity and official capacity.Her place of business the same as the company.

28.   Defendant Jose Izquierdo, is a licensed architect and licensed attorney in the State of New Jersey, at all times material to this complaint he is sued in his individual capacity and official capacity *2  located at 207 60th Street, in the City of West New York, NJ 07093

29.   Defendant JAI Architects,LLC., is an entity created under the laws of the State of New Jersey to facilitate business in building designs, at all times material to this complaint its being sued in its business capacity and located at the same business of Jose Izquierdo,.

---

*2  Jose Izquierdo, pleaded guilty to extortion charges and bribary charges in the Federeal Court, District of NJ, an active player in this controversy.

-9-

30.    Defendant Rose Tubito, is a licensed attorney to practice law in the State of New Jersey at all times material to this complaint she is sued in her individual capacity and official capacity with the firm, her place of business is located at 239 Old Tappan Road, Old Tappan, NJ 07675.

31. .  Defendant Ronald Abraham, is a licensed attorney to practice law in the State of New Jersey, at all times material to this Complaint he is being sued in his personal capacity and his official capacity with his law firm. He is located at 24 Irving Street, lower floor in Jersey City, NJ 07303

32.    Defendant the Law Firm of Ortiz & Paster, is an entity created under the laws of the State of New Jersey, to facilitate the business as law  firm at all time material to this complaint its being sued in its business capacity, and located then at 440 60 Street in West New York, NJ 07093

33.    Defendant Gregg F. Paster, Esq, is a licensed attorney in the State of New Jersey at all times material to this complaint he is sued in his individual capacity and as partner with the firm, he  is now located at 58 Main Street in Hackenscak, New Jersey 07601.

34.    Defendant Wilfredo J. Ortiz,II. is an attorney licensed to practice law in the State of New Jersey, at all times material to this complaint he is sued in his individual capacity and as a partner in the firm he is located now at 4808 Bergenline Avenue in Union City, New Jersey 07087.

-10-

35.    Defendant Sherif H. El Far,P.E. is a licensed Engineer within the State of New Jersey, at all times material to this complaint. He is sued in his persoanl capacity and official capacity with Empiretech, Consulting and Empirectech, Construction.

36.    Defendant Jay B. Zucker & Kwestel LLP., is an entity created under the laws of New Jersey, they held themselves as law firm representatives while they were acting as lenders as well, at all times material to this complaint. They are being sued in their official capacity and individual capacity.

37.    Defendant Jay B. Zucker, Esq., is a licensed attorney in the State of New Jersey, at all times relevant to this complaint he is being sued in his personal capacity and his official capacity as a partner/and or shareholder of 54 Inc., and Zucker & Kwestel, LLC.

38.    Defendant David M. Watkins, is a licensed attorney to practice law in the State of New Jersey, at all time material to this Complaint he was general partner/associate of Rose Tubito, Esq., during the times she took the matter against the City of Union City, he is sued in his personal capacity and his official capacity his place of business is 285 Closter Dock Rd. Closter, NJ 07624.

39.    Defendant 54 Inc., is an entity created under the laws of New York, to facilitate construction loans, at all times material to this complaint its being sued in its official business and personal capacity.

-11-

40.    Defendant J.D.P. Construction Services,LLC is an
entity created under the laws of the State of New Jersey to
facilitate construction work at all times relevant to this
complaint its being sued in its business capacity. It is located
at 209-60th Street, West New York, NJ 07093.

41.    Defendant Juan Jose De La Paz, is the priniciple
owner of J.D.P. and the person engaged with the plaintiff and
received in excess of $10,000. ten thousand dollars and never
returned at all times relevant to this complaint he is being sued
in his individual capacity and official capacity.

42.    Defendants John Does, is the unknown convicted
defendants as a result of John Medina's cooperation with the
F.B.I., in the District of New Jersey, at all times relevant to
this complaint they are being sued in their individual capacity
and official capacity.

## V. S T A T E M E N T   O F   F A C T S

43.   Adip Tadros, Norma Tadros, and Genesis I,Inc., were the owners of subject property located at 1208-1210 Summit Ave. Union City, New Jersey from 1998 until 2009.

44.   The subject property was used as Billiard Parlor and Catering Services until August of 2002. The business was very successful business and generated reasonable income to the plaintiffs.

45.   During the operation of the Billiard Parlor, the plaintiffs encounter repeated harassment with the City Police, Building Department, Fire Department and Public Work Department for the sake of harassment and intimidation tactics they used against the plaintiffs and their animus against the plaintiffs.

46.   During the period of 1998 until August of 2002, the plaintiffs and their business was forced to pay money to City Officials through eating at all times without paying the cost for their meals, and ordering 300 to 500 Sandwiches for the Mayor campaigning and private City affairs, in additions to using the Dry Cleaning and Washing business without paying any money to the plaintiffs.

47.   During the period of 1998 until August of 2002, Defendant John Medina informed the plaintiffs that for a fee all of these headaches will be gone and no one will be harassing them any more; these offers was repeated by John Medina, every time he met with the plaintiffs.

-13-

48.   During many fires in the City, the plaintiff was forced to Dry-Clean and wash all fire victims with promises to pay the fees by the City, the City officials never pay any money towards these services and the money was pocteted by the City officials.

49.   During the period of 1998 until 2002 the plaintiffs received hundreds of traffic citations and building citations based on bogus allegations. The City officials continued to use the same line "If you'r with us non of this would happened" meaning if we start pay them regularly all of my problems would go away.

50.   During the period of 1998 until 2003, the Police Department, Fire Department, Public Safety, and others continue to harass the customers by constant business intereption on daily basis, by intimidation, threatening the plaintiffs and harassing their customers.

51.   During that period of 2002-2005 the harassment went on to wrongfully arrest Norma Tadros, plaintiff and the wife of Adip Tadros based on bogus incident then after four hours they released her without any charges.

52.   During the arrest of Norma Tadros, racial remarks were made by the Police Officers stating "over my dead body this place will remain open for these "sand nigers". Sand Nigers is a slurs used against Arabs National in the United States.

-14-

53. Some time in early year 2002, John Medina and Mayor Brian Stack, came to the Billiard Parlor Mayor Stack suggested to Adip Tadros, the idea of expanding the building to additional 24 residential units in addition to two Commercial floors for the Billiard Parlor. The Mayor made this suggestion for his desire to increase the number of voters in the City so he can remain the Mayor for a very long time. *3

54. The palintiff was receptive to the idea and John Medina made certain conditions as to who will perform the work on the project and whom gets the contarcts on all trades.

55. On August 9, 2002 the plaintiff was issued use and bulk variance from the Zoning Board of Adjustment to build a mied-use building at the property which was to include Commercial Units on the first floor and Second floor, and 24 residential units above the Commercial space. All these services for a weekly cut of the business and a lump sum amount to the Mayor and other City Officials.

---

**\*3**
**Union City Zoning & Ordinance Required a Minimum of One and Half parking space for each residential unit being build in the City. The Mayor, and Zoning Board Members approved this project while they were fully aware of the parking requirement the City suffer from severe shortage of parking. This parking requirement has been made mandatory in every City in Hudson County including Union city as well. The reason for this variance is very clear the prise tag Mayor Stack and JohnMedina place on it for their deviation of mandatory requirement.**

-15-

56.   During the period of 1998 until August of 2003, the money was paid through   the plaintiff varied from $1,000. to $10,000. in Cash, in additions to free meals on daily basis and free coffee at all times. The defendants also took bulk meals and sandwiches between 300-500 sandwiches without paying for it. The defendants also forced the plaintiffs to clean and dry-clean all fire victims properties during that period without receiving any money.

57.   Upon information and believe the defendants charged the City for these services and kept the money to enrich themselves.

58.   Plaintiffs retained the services of R&M Construction Inc., and construction application was submitted on April 16, 2002.

59.   Some time in April 26, 2002 the Building Department noticed various electrical deficiencies and building code deficiencies and was corrected on May 3, 2002.

60.   Upon information and believe the Union City Building Officials was not happy with R&M Construction of being the Contractor on the project and their dissatisfaction was expressed  through John Medina on behalf of Mayor  Stack, building Department Official Martin Martineti.

61.   On June 12,2002, the plaintiff notified the building department in Union City that it had retained a new principle contractor to perform the construction work naming Empiretech, based on City Officials recomendation and Empiretech longstanding relationship with city officials and its building department.

62.    On or about early 2003, Empiretech, re-submitted a different Bule Prints reflecting some changes as to the elivater by switching side from the previous prints. Within three months the prints were approved by the City officials, however, the city approval was for a plans was originally made to another project in the City of Hoboken, with complete different address and zoning requirements the City allowed such approvals to take place knowingly the plans belong to another project and reflects its addresses in Hoboken, NJ. *4

63.    Defendant Abbas A. Shah, P.E., was the Engineer and designer for Empiretech with his vice president Connie Younis, the revised plans they submitted to the building department was entirely differ from the original one they filed with the city, and contained massive violation of City and State Codes.

64.    As of April 2003, every plans were submitted to the building department had to be changed and deficiencies were found while the plaintiff continued to incurr expenses for corrections adding additional cost for Engineering and Architectural work.

65.    The plaintiff began noticing and suspect the deliberate delays and faulty designs that should meet the local and State Codes.

---

*4 The plans and specifications that Empiretech submitted to the building department belong to another project in Hoboken New Jersey, it was cust and past job by Empiretech leaving the address of the pervious job, which is entirely different from the one they assigned to perform in Union City, which has its own Zoning and Ordinance requirement.

66.   During the process of obtaining permits the defendants Mayor Brian Stack, Zoning Board Members, Commissioners, Building Department, John Medina, Martin Martinetti, and Chief of Police began to purposefully delay approvals necessary for the Construction project and began forcefully extort money  from the  plaintiffs in order to grant approvals and permits to construct said project both before and during construction phases.

67.   On or about July of 2003 the plaintiff retained the services of Ortiz & Paster law firm out of West New York, NJ based on their long standing relationship with City Mayor and its officials. Gregg F. Paster Esq., instructed Empiretech not to proceed with any further work on the project since the construction of the building they provide contained significant deviations from the building codes that left the building be unsafe.

68.   On or about August 25, 2003 the plaintiffs retained the services of "Allied Engineering" to inspect the structural work performed by the defendants Empiretech, and the building was declared unsafe and the structrual integrity of the existing building must be torn down.

69.   The Building Department made its inspection and also determined that the building is unsafe relying also on "Allied Engineering Services Report" *5

---

*5 It should be noted that the same plans and specifications that Empiretech submitted to the Building Department and were approved by the building inspectors are the same plans Empiretech used to construct the work that being condemned by Allied Engineering Services.

70.    Every changes and/or modifications were made to the project plans hands were out to collect money from the plaintiffs not in form of fees rather it was bribes and extorted money from the plaintiffs to expedite the review and process and keep the project going.

71.    On March 5, 2004 R&M construction Co., was assigned to take over the project and a partial demolition permit was issued, during the application for demolition permit Carl Macky was informed by the building inspector Martin Martinetti, that this project will never be completed as long these Arabs remained the owners.

72.    Upon information and believe Martin Martinetti assured R&M construction that he will do whatever in his power to stop this project and close it down, he also advised R&M to make sure they are paid in advance because he will stop this project.

73.    John Medina advised the plaintiff that he should assign J.D.P. construction services LLC, to please Martin Martinetti and things will run smooth. The plaintiffs retained the services of J.D.P. Construction Services LLC, owned by Juan De La Paz, and deposit was paid in the amount of ten thousand dollars, J.D.P. never did any work and abandoned the job, the plaintiffs lost the deposit of $10,000.

74.    Upon information and believe the deposit money was shared between Martin Martinetti and J.D.P.

75.    J.D.P. construction Services LLC, had close relationship with the city officials and Juan de la Paz is close associate of them.

76.    Attorney Wilfredo J. Ortiz II, was close associate with City Officials and working closely with City Mayor and its politics on several projects and during campaigning for the Mayor where he left his partnership with Gregg F. Paster and worked with the City.

77.    The plaintiffs were repeatedly contacted by John Medina concerning the final approvals of the project and the money they agreed on to pay to him and his associates *6 it was part of the scheme to defraud and artifice that the defendants will continue to control the project through their control of the permits and its final approvals.  Every time the defendants met with the plaintiff lunches and drinks all at the expenses of the plaintiffs. It was custom that at all times the plaintiffs incur the cost of meals and gifts as late as 2009, and until present.

---

*6 All Cities and Municipalities throughout the State of New Jersey Customs and Practices no permit issued unless plans and specificationsa are fully submitted, reviewed and accepted by all components of the Building Department, building, Plumbing, Fire, Safety, and Electrical. It was part of the conspiracy to piece meal all approvals to continue extort and full control over the project and its success.

-20-

78. The plaintiffs thus far lost in excess of Fifteen Million Dollars ($15,000,000.00), due to the scheme played by the defendants Empiretech, City Officials, John Medina and the assigned Architects and Engineers in providing defective plans and specifications that does not meets the local and State building Codes.

79. John Medina contacted the plaintiffs in efforts to reach final agreement on the amount of money must be paid to him and Brian J. Stack, and City officials a meeting was setup in the 23rd. street area of Summit Avenue in Union City.

80. It was expressly made clear to the plaintiffs through John Medina that unless money was paid the final approvals will never be accomplished. It was then when the plaintiff decided to seek the help of the F.B.I. and tape recording John Medina .

81. Plaintiff advised his attorney then Ronald Abraham, that he decided to tape record the demands made by Medina, Ronald Abraham protested to the idea by stating "these are my friends and he needs them for future projects".

82. The plaintiff went on with his plans and disregarded his attorney's advise not to record the minutes of his meeting with John Medina.

83. The plaintiff met with John Medina, on 23rd street and Summit Avenue in Union City, he was patted down by Medina when they met. Upon his return to his car the plaintiff rehearsed all discussion of the pay offs while the tape recording was on in his car.

-21-

During the rehearsal which was fully recorded *7 Medina clearly place on the record how much of money needed for the Mayor and who should receive the construction contracts for the building to be completeed.

84.    The defendants engaged in multiple and varied predicate racketeering acts of bribary, extortion, intimidation, fraud, blackmail, threats, fraud in the inducement, aiding and abetting, State Rico, and State Rice Conspiracy, Common law fraud, and all other listed counts in ¶I of this Complaint. The defendants misconduct and crimes went on over the course from at least early 1998 until present.

85.    Mayor Brain Stack, Chief of Ploice, Building Inspector along with all Officials listed in this Complaint used the City of Union City as the Enterprise for purpose of the Racketeer Influenced and Corrupt Organization Act. "RICO" .

86.    Defendants City Officials intimidated  the Plaintiffs in violation of intimidation Statute. They committed intimidation with the intent to cause the plaintiffs to perform an act, that is to extort the plaintiffs with its police department, in issuing excessive citations and harassment while conducting business.

*7 Copy of the tape recording was provided to the FBI, which led to Medina's Criminal Conviction and 23 others, as the investigation remain ongoing.

87.    Defendant Ortiz & Paster, were close associates with Mayor Brian Stack, of Union City and City Officials from the Zoning Board Members to the Building Department. The defendants Ortiz & Paster was aware of the extortion and bribery the plaintiff was forced to pay to the City officials.

88.    Defendants Ortiz & Paster, stated that bribery and extortion money in this manner is part of the business expenses that all business men deal with these days.

89.    Defendants Ortiz & Paster, was working with the City Officials on other projects in the City while the plaintiff was being extorted and bribery ongoing to received the final approvals for the Plaintiff's building.

90.    At no time the defendants Ortiz & Paster, advised the Plaintiffs that this conduct of the City Officials was in fact a Criminal Conduct and constitute a Federal and State Crimes.

91.    Defendants Ortiz & Paster, was aware of the City manipulating the plaintiffs in issuing the final permits to complete the project and being harassed by the City officials.

92.    Defendants were retained based on their strong relationship with City Mayor and its Officials, the defendants have longstanding relationship with City politics and assistaed them in their campaigning as Mayor and other posts within the City.

93.    Defendants Ortiz & Paster was fully aware of the Empiretech, close relationship with City officials and the

-23-

94.     Defendants Ortiz & Paster encouraged the plaintiffs to deal with the City Officials in the manner described herein this complaint in paying bribes and allowed be extorted.

95.     Defendants Ortiz & Paster, worked closely with the City Officials while they represent the plaintiff and with full awareness of the bribes and extortion being committed against the plaintiffs.

96.     Defendants Ortiz & Paster, had close relationship with Jose Izquierdo, Architect and was retained based on their recomandation and the City recommendation.

97.     Defendants Ortiz & Paster, Conspired with City Officials and Jose Izquierdo, to delay the project and continued to receive payments on alleged legal representations that was tainted and motivated by greed in obtaining legal fees on continoued basis.

98.     Defendants Ortiz & Paster, Empiretech, and Izquierdo, along with city officials Conspired to delay and prolong the completion of the project and force the palintiff to pay more bribes , legal fees and construction design changes.

99.     Defendants Ortiz & Paster, deliberately failed to provide affidavit of Merit as required by New Jersey Rules which led to the dismissal of the claims against the defendants Empiretech, for Architectural and Engineering Malpractice in the performance of the plaintiffs project 1208-1210 Summit Ave, in Union City, NJ .

-24-

100.    Defendants Ortiz & Paster, deliberately failed to vacate the dismissal orders in the case they were handeling which led to a dismissal with prejudice.

101.    Defendants Ortiz & Paster aided and abeded Empiretech, and City Officials by allowing the case be dismissed based on requirement that any lay man at law can understand and meet such requirement.

102.    Defendants Ortiz & Paster, aided and abeded Empiretech and City Officials in failing to vacate the dismissal orders by the court that led to dismissing with prejudice in Case Docketed at Hudson County Court House

103.    Defendants Ortiz & Paster, was aware of the contacts between John Medina and the plaintiff.

103.    Defendant Ronald Abraham, was appointed to aid the plaintiffs in their legal issues with Gregg F. Paster, and his partner Wifredo J. Ortiz,II., and to protect plaintiff's interest in the undelying claims against Empiretech, Consulting Associate Inc., and Empiretech Construction Associate Inc.,

104.    Defendant Ronald Abraham, was aware of the plaintiffs problems with Union City officials. Abraham, had close relation-ship with City officials and Mayor Brian Stack.

105.    Defendant Ronald Abraham, was aware of the extortion and bribes being demanded by the City officials from the plaintiffs.

106. .   At no time Ronald Abraham advised the plaintiffs that the city officials conduct constitute a crime and must be reported.

-25-

107.   Defendant Ronald Abraham, deliberately objected to plaintiff's decision to tape record the City Officials while they were demanding money for permits approvals.

108.   Defendant Ronald Abraham, had personal interest in keeping the plaintiffs in a disarry concerning his financial affairs and money withheld in his trust account.

109.   Defendant Ronald Abraham took in excess of $1,330,000. One Million Three Hundred Thirty Thousand Dollars, and refused to account for it since he took that money.

110.   Defendant Ronald Abraham, misappropriate the trust fund placed in his trust account to pay his own debts and other expenses for his own use.

111.   Defendant Ronald Abraham, deliberately failed to comply with New Jersey State Rules so the plaintiffs will lose their underlying claims against Empiretech.

112.   Defendant Ronald Abraham, deliberately failed to vacate the court order in dismissing plaintiffs claims against Empiretech.

113.   Defendants Abraham, Ortiz II, and Paster conspired with each other to cause harm to the plaintiff so the project will be forecloused and lost.

114.   Defendants Abraham, Ortiz II, and Paster aided and abetted each other in forcing the plaintiff to lose his claims against Empiretech, and ultimately the loss of the project.

115.   Upon information and believe the City officials had a stand by buyer to purchase the property from foreclouser.

-26-

116.    Upon information and believe defendants Abraham, Ortiz II, and Paster had long standing relationship with the City officials and had participated in the Mayor election and had campaigne to the Mayor party.

117.    Upon information and believe Ortiz II, left the partnership with Ortiz & Paster and join the Mayor's group.

118.    Defendants Abraham, Ortiz II, and Paster was working in clear conflict with the plaintiff and have worked under divided loyalty against the interest of the plaintiffs.

119.    Defendants Wifredo Ortiz II, and Gregg Paster, both defrauded the plaintiffs through billing fraud, and misinformation concerning plaintiff's underlying claims against Empiretech.

120.    Defendant Abraham, misinformed the plaintiffs and defrauded them through false billing and misappropriation of funds belong to the plaintiffs.

121.    Defendants Abraham, Ortiz II, and Paster all jointly conspired with City officials to fail the Billiard Polar project through the excessive bribes and extortion played against the plaintiffs and the excessive delays and prolonging in approving the project.

122.    It was part of the conspiracy that the plaintiffs will lose the subject property and be bought by another loyal party to the City officials.

123.    It was part of the conspiracy that the "Sand Niger" will not complete the project.

-27-

124.   Defendant Rose Tubito, Esq., was selected to cure all the misconduct created by the defendants attorneys and to bring justice to the plaintiffs.

125.   Defendant Rose Tubtio, was working out of the Law Firm of David , Watkins, in Closter New Jersey. She acted as a partner/associate of the firm and was retained for the legal representation against all other parties including the City of Union City and its Mayor and Board Members.

126.   Defendant Rose Tubito, caused a Complaint be filed against the defendants Union City in Hudson County Law Division Docket No.HUD-L-5219-08

127.   Defendant Rose Tubito, later moved on her own and established her own practice as the Law Office of Rose Tubito, in Old Tappan, NJ.

128.   Defendant Rose Tubtio, never disclosed to the palintiffs that she was acting on her own outside the law office of     David Watkins, and the plaintiffs retained her services based on the fact that David M. Watkins was involved in the case.

129.   Defendant Rose Tubito, failed to disclosed certain facts that was relevant to the litigation against the City, she failed to disclose her father longstanding relationship with the City officials back to the early 1970s.

130.   Defendant Rose Tubito made the plaintiff's claims against the city to be dismissed for her lack of interest and divided loyalty to the political party in Union City.

-28-

131.    Defendant Rose Tubito was contacted by the City Mayor close associate for legal representation "Rose Marini" from Union City, Marini had long standing relationship and close associate of the Mayor.

132.    After Rose Tubito, took the legal assignment with Rose Marini, Tubito, took no further interest in the case against the city and abandoned the case that led to dismissing the entire case.

133.    Upon information and believe defendant Tubito, was approached in a manner to abandoned the plaintiff's case and ceased further communication with the plaintiffs.

134.    Plaintiff's case against the City ultimately was dismissed for lack of prosecution and lack of appearance to defend the case

135.    The plaintiffs have meritorious case against the City as well against attorney Joel M. Bacher, another cause of action for legal malpractice claims.

136.    Defendant Tubito, conspired with City officials to abandoned the plaintiff's case against the City.

137.    Defendant Tubito, was fully aware of the plaintiff's level of education and took advantage of their lack of eduaction and lack of financial ability to seek other attorneys.

138.    Defendant Tubito, violated the New Jersey Rules of Professional Conduct in her divided loyalty to the plaintiffs and conspire with the City officials to abandoned plaintiff's case against them.

-29-

139.   Defendant Rose Tubito aided and abetted the City officials to obstruct justice in dismissing and tampering with the plaintiff's cause of action.

140.   Defendant Rose Tubito, acted with clear conflict while representing the plaintiffs with unclean hands.

141.   Defendant Rose Tubito used her prior employment to gain the representation of plaintiff's case and withheld the fact that she was not a partner with the firm.

142.   Defendant Rose Tubito, used David M. Watkins, law firm as a bogus representation that she is a partner with that firm so she can gain business of her own.

143.   At no time Rose Tubito, informed the plaintiffs with her standing with David M. Watkins, Esq., rather than she held her self as a partner with that firm.

144.   Defendant David M. Watkins was the partner/employer of Rose Tubito, during the times the plaintiffs retain the services of Rose Tubito, against the City of Union City.

145.   Defendant David M. Watkins was aware of Tubito's legal representation of the palintiffs. David M. Watkins is liable under the New Jersey Rules of Professional Conduct and subject to be imputed by the plaintiffs.

146.   Defendant David M. Watkins was obligated to disclose Rose Tubito's relationship with the firm.

-30-

147.    The defendants Empiretech, Consulting and Empiretech Construction committed various acts of professional Architectural malpractice and Engineering malpractice in their design to the plaintiff's building. Abbas A. Shah, and Connie Younis was the owners of Empiretech, they conspired with city officials and others to design building that failed to comply with the Rules of Professional Conduct for Architects in New Jersey by falling far short of acting with reasonable care and competence in providing a severely inadequate structural design.

148.    The affidavits of merit and the expert reports on the defectes of the design and construction practices clearly shows a prima facia case of Negligence and malpractice against the defendants in the underlying claims the attorneys pursued.

149.    All attorneys defendants listed in this action conspired along with the City officials so the plaintiff will finally lose the building and not being able to defend the litigation nor discover the criminal acts  on part of all of the listed defendants.

150.    All attorneys conduct in handling  the affairs of plaintiff's litigation fell far from what is required by competent attorneys. Their failure to comply with New Jersey Rules is the simplest practices any lay person in the field of civil litigation would comprehend.

151.    All attorney's conduct was deliberate in nature and motivated by greed and to injure the plaintiff through their false billing and misinformation.

-31-

152.    Defendant Jay B. Zucker, Esq., was the attorney and legal/partner representative of 54 Inc., the lending entity that advanced the Construction loan to the palintiffs.

153.    Defendant Jay B. Zucker, made material misrepresentation to the plaintiff concerning their ability to receive more money for the completion of the subject property 1208-1210 Summit Avenue. Union City, NJ.

154.    Defendant Jay B. Zucker coerce the plaintiff to accept less money to start the construction knowingly that the amount he lend was insufficient to complete the project and allow the place to generate income.

155.    Defendant Jay B. Zucker, made false and misleading promises in order to close the loan that he will grant more money if needed to complete the project.

156.    Defendant Jay B. Zucker refused to grant additional money to complete the project.

157.    Defendant Jay Zucker, was acting in conflict of interest when he approved the loan to construct the building. He was acting an attorney and lender at the same time.

158.    Defendant Jay B. Zucker, violated Truth in Lending Act. Title 15 U.S.C. §1601 et seq. by misleading the plaintiffs in accepting false and misleading promises that led to the loss of property.

159.    Defendant Jay B. Zucker, close the construction loan with the plaintiffs knowingly that the amount they lend will not be able to complete the project.

160.   Defendant Jay B. Zucker, knoingly and intentionally coerce the plaintiff into accepting the terms and conditions of the loan documents knowingly that he will ends up with owning the property.

161.   Defendant Jay B. Zucker failed to review and insure the plans and specifications were up to code and permits were approved prior to advancing the loans.

162.   The plaintiffs realleges and incorporate by reference as if they were repeated in full all allegations in ¶ 150 through ¶159, of this complaint to apply to defendants 54 Inc., the lending entity.

163.   Both Jay B. Zucker, Esq., and Zucker & Kwestel, and 54 Inc., violated the Truth lending Act of Title 15 USC §1601, and owed the plaintiffs duty of care in the supervision of the construction project and insure its completion.

164.   Defendants Zucker, Zucker & Kwestel, and 54 Inc., failed to insure that plans and specifications were in compliance with building codes and failed to insure the permits were issued prior to its funding the project.

165.   The defendants Zucker, Zucker & Kwestel, and 54 Inc., was aware of the plaintiff's financial condition and was fully aware of his inability to complete the project with the funds they lend him and knowingly they expect the project to fail and be  in foreclosure.

166.   The defendants Zucker, Zucker & Kwestel and 54 Inc., aided and abetted each other to violate and deprive the plaintiff of his property.

-33-

167.    Defendants Jay B. Zucker, Zucker & Kwestel, and 54 Inc., foreclosued on the plaintiff's property some time in late 2009, and sold such property with high profit and began their new scheme .

168.    Defendants Jay B. Zucker, Zucker & Kwestel and 54 Inc., succeeded in their plans to take over the building and then sold it for huge profits.

169.    Defendants Jay B. Zucker, Zucker & Kwestel and 54 Inc., refused to grant the plaintiffs additional money to finish the project when they were fully aware of the value of the property at that time.

170.    The defendants breached their agreement and promise to advance more money if needed to complete the building, in time where the building was over %50 completed.

171.    Upon information and believe the defendants City officials now negotiated another deal with the new owners of the subject building to increase the number of units being build on that site without allocations to any parking spaces.

172.    Upon information and believe the defendants City officials endorsed the project to receive City, State, and Federal Grants to complete the building and increase the number of its units.

173.    Upon information and believe the new owners of the subject building are close associates of the City officials and the Mayor.

-34-

174.   The defendants engaged in multiple and varied predicate racketeering acts of bribary, extortion, intimidation, fraud, blackmail, threats, fraud in the inducement, aiding and abetting, State Rico, and State Rico Conspiracy, Common law fraud, all listed in ¶ I. of this complaint. This official misconduct went on over the course of at least from 1998 through 2009.

175.   Mayor Brian Stack, Chief of Police along with all City officials used the City as enterprise for purpose of the Racketeer Influenced and Corrupt Organization Act, "RICO".

176.   Defendant City official intimidated plaintiffs in violation of intimidation statue. They committed intimidation with the intent to cause the plaintiffs to perform an act, that is to extort the plaintiffs with its Police Department, in its excessive citations and harassment while conducting business in the Billiard Parlor.

177.   Defendants made threats to take action against anyone or any thing as a Public officials without authority, that is, arbitrarily threatening to take action against the plaintiff and his business.

178.   It was part of the Conspiracy between all of the defendants City officials, to extort, intimidate, threatened and receive bribes in order to frustrate the palintiffs and forced 'them to share the revenues received from the Billiard Parlor.

179.   Defendants were a public employees and their conduct was outside the scope of their employment and constituted a crime, actual fraud, actual malice and willful misconduct.

180.   Defendant Mayor, Brian Stack, Chief of Police and all City officials had direct administrative control over issuing zoning approvals, building permits within the city of Union City.

181.   The defendants violated Title 18 U.S.C. §1962 (c), by engaging in the conduct of the building department and zoning board through a pattern of racketeering activity.

182.   The defendants obtained property, money from the plaintiffs with their consent, induced by wrongful use of actual or threatened force, violence or fear or under color of official right.

183.   The defendants receipt of personal and financial benefits violate the Mail Fraud Statute, once its received with the public officials understanding that it was given to influence his decision-making.

184.   The defendants whom are public officials allowed and accepted the conflict of interest with the understanding or intent that they would perform acts within their official capacity in return.

185.   The defendants misuse of the City offices was intended for personal gain, and to enrich  themselves .

186.   Defendant Mayor Brian Stack, was deeply involved in and integral to the operation of the enterprise in furtherance

-36-

of the scheme and reflective of his important role in the enterprise.

187.    Defendants City official, Empiretech, Jose Izquierdo, John Medina, Martin Martineti, Conspired to use their positions of power to obtain bribes money and other things of value from the plaintiff doing business through extortion, bribery and fraud.

188.    Defendants Union City officials, and Hudson County municipalaties in general have long standing history of cases of bribery and public corruption as it has been evident by the latest raid of the FBI in last July of 2009 sweeping all Hudson County City officials.

189.    It is the custom and polcies in Union City, and other cities in receiving money for their zoning approvals and issuance of building permits followed by bribes and unlawful money.

190.    Following the tape recording of John Medina, the plaintiff through his atorney Ronald Abraham, contacted one of the City Commissioners Christopher Irizarry, of Union City and advised him of the building department refusal to issue the final permits unless money was exchanged.

191.    Defendant Christopher Irizarry, was notified of the threats, extortions and blackmail by John Medina, on behalf of the Mayor, and City officials. The tape recording was disclosed to Irizarry, and became aware of the existence of the recorded conversation.

192 .   Defendant Irizarry is a close friend of Ronald
Abraham, Esq., at first Abraham attempted to take control of
the original tape recording the plaintiff made.

193 .   After Abraham contacted Irizarry, and informed him
of the existence of the tape recording of John Medina, he made
that information available to the Mayor Brian Stack, the
plaintiff then was instructed that all permits will be ready the
next morning so long the tape recording will not be used and
will not be made public.

194 .   The plaintiff went to the building department and
all permits were issued and fees was waived.

195 .   The defendants made serious threats and violence
against the plaintiffs and their family if such information be
used against them. John Medina made it clear to the plaintiff
that his life will be in danger if he let these tapes out.

196 .   The plaintiff then sought the assistance of the FBI
(Federal Bureau of Investigation), after lengthy debates with
his former attorney Ronald Abraham. The Plaintiff then met with
FBI agents from the Newark, NJ offices and released the tapes
to the FBI, it is then when the FBI instructed the plaintiff not
to discuss the matter with any one nor initiate any suits against
the defendants Union City until the investigation is over.

197 .   The plaintiff was instructed by the FBI to cease any
further communication with Medina and City officials.  Until they
notified by the FBI.

198 .   The plaintiffs along with his attorney was instructed
by the FBI, not to seek any legal action so the investigation
will not be disturbed .

-38-

199.    The tape recording reveals that Medina agreed to accept the corrupt payment in installments of either four, $5000 payments or two, $10,000. payments.

200.    Defendant Medina admitted that, in exchange for the corrupt cash payments, he would make it easier for the building project during its inspection by Union City authorities and expedite the renewal of permits for the project.

201.    Defendant Medina also said that he intended to share the cash payments with other city individuals involved in the extortion scheme.

202.    Defendant Medina admitted that he held himself out as close associate of the Mayor, and Zoning Board Commissioners.

203.    Defendant Medina conspire with all city officials, and Empiretech, Jose Izquierdo, AIA, to continuously delay the project approvals to continue the extortion scheme they all acted in concert against the palintiff.

204.    Defendant Medina, finally informed the palintiff that the construction project would never be approved even though he had hired professionals and spent in excess of $200,000 to complete them.

205.    Defendant Medina, Martin Martinetti, made it clear to the plaintiff that unless he hired Jose Izquierdo, and his firm the project would never be approved and completed .

206.    Plaintiffs spend in excess of $200,000. to Jose Izquierdo, and immediately the plans were approved.

-39-

207.    Defendant Jose Izquierdo, had a long-standing relationship with City officials including its Mayor and its Commissioners, Izquierdo, had an active role in the City affairs and its politics where he had been receiving bribes and bribing the officials for the special treatment in receiving his zoning and permits approvals.

208.    Defendant Jose Izquierdo, an attorney and architect owner of JAI, Architect in West New York, NJ also admitted to the FBI that he made payments to a Union City Board of Zoning Adjustment member to win favorable consideration of building projects over several years and had committed perjury to the FBI, during an interview in 2006.

209.    Defendant Jose Izquierdo, admitted making a number of such payments in exchange for official favors and referrals between 2000 and 2007.

210.    Defendant Jose Izquierdo, was indicted and pleaded guilty in late 2008.

211.    Upon information and believe John Medina, and Jose Izquierdo, investigation and cooperation with the FBI, had resulted in excess of 22 conviction within the Union City Officials and the investigation is continuing and ongoing with more indictment expected against more City officials.

212.    The defendants, through their purposeful and willful misconduct of delay and extortion measures caused severe harm and damages to the plaintiffs.

-40-

213.   The defendants fraudulently, negligently, and intentionally made the plaintiffs suffer severe consequences as a result thereof.

214.   The defendants were fully aware that their conduct was causing severe delays and damages to the plaintiffs, however, they continued these illegal acts while they were acting under color of law in order to financially benefit off the palintiffs through the extortion tactics, fraud, bribes, threats, among other things.

215.   The plaintiffs was intimidated and harassed and they had no legal recourse against such high powered City officials and their arm of police department personal.

216.   The plaintiffs have suffered and continue to suffer severe economic, financial, emotional, mental, and physical damages as a result of defendant's wonton intentional and deliberate willful misrepresentations, and willful misconduct.

217..   The defendants caused serious injury and damages to the plaintiffs by their intentional, willful, and illegal activities for personal financial gain.

218..   The defendants acted purposefully, knowingly, recklessly and intentionally under circumstances manifisting extreme indifference to the value of plaintiffs economic, financial, emotional, mental, and physical health and well being.

219.   Due to defendant's tortious and interference of plaintiffs construction project and commercial businesses they suffered substantial economic loses.

-41-

220.   The plaintiff was a successful entrepeneur, and enjoyed a substantial means of living and was able to support his family. However due to the actions by the defendants, the plaintiff was forced into financial ruin expending substantial amounts of money given by family and friends in an attempt to recover. However, the plaintiff was never able to recover the losses caused by the defendants actions which was purposefully instituted by the defendants that caused the project to cease midway and suffer loss including his building and his residence.

221.   The defendant's parasitic and willful tortious acts, caused the plaintiffs physical, economic, and emotional injuries.

222.   The plaintiff's injuries caused by the defendants are permanent in nature, they have been emotionally distressed showing signs of instability and depression whereby their quality of life has been permanently damaged.

223.   The defendants City officials made numerous oral false statements to mutual friends and business associates which were intended to impeach plaintiff's honesty, integrity, and or reputation.

224.   The plaintiffs conducted business in Union City, serving thousands of patrons in Union City and its surrounding Boroughs.

225.   Defendant's reckless disregard of the statements' truth and/or falsity resulted in liability whereas the plaintiffs business and/or reputation to continue has severely suffered and may never recuperate.

-42-

226.   Upon information and believe John Medina cooperated with the FBI, and resulted in 23 other convictions and the FBI investigation undergoing.

227.   Upon information and Public record John Medina was sentenced to five months jail sentence and three years of supervised release.

228.   Upon information and believe Jose Izquierdo, also pleaded guilty and was sentenced in December 2009.

229.   Upon information and believe Izquierdo, also cooperated with the FBI, that resulted in the prosecution of others known and unknown to the plaintiff.

230.   The last overate acts of threats and intimidation was as late of 2008 from City officials and police officers encountered with the plaintiff place of business.

231.   The threats were made concerning the tape recording and the investigation of City officials conduct and the City of Union City.

232.   Many anonymous telephone calls repeatedly was made threatening the plaintiff's life and family safety, as late as year 2009.

233.   Upon information and believe the FBI, investigation is ongoing and more indictment to come down concerning the huge ring of City officials corruption scandle.

-43-

## IV.   DEFENDANT'S LIABILITY FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION

**A.**   **COUNT ONE:**

### Violation Of Title 18,U.S.C. § 1962(c); Conducting The Affairs Of The Enterprise Through A Pattern Of Racketeering Actvity.

1.   The plaintiffs realleges and incorporates by reference in this Count the allegations contained in Section **VI.,V., IV,** of this complaint, as if fully set forth herein.

2.   From at least the early 1998 and continuing up to and including the date of this filing of this compalint, in the District of New Jersey and elsewhere, the defendants listed in paragraphs ¶ 4 through ¶ 42 and others known and unknown, being persons employed by and associated with the Enterprise described in Section VI B., below, did unlawfully, knowingly, and intentonally conduct and participate, directly and indirectly, in the conduct, management, and operation of the affairs of the aforementioned Enterprise, which was engaged in, and activities of which affected, interstate and foreign Commerce, through a pattern of racketeering activity consisting of numerous acts of racketeering in the District of New Jersey and elsewhere, indictable under Title 18 U.S.C. §1951 (b), (extortion) and §1341 (mail fraud) and §1343 (wire fraud), including, but not limited to, the acts of racketeering alleged in the Complaint which are incorporated by reference and realleged as fully set forth herein, in violation of 18 U.S.C. §1962(c).

-44-

B.      **The Enterprise Manner and Means**

3.    From at least the early 1998, and continuing up to and including the date of the filing this complaint, in the District of New Jersey and elsewhere, defendants listed in paragraphs ¶ 4 through ¶ 42, and others known and unknown, including agents and employees of defendants, collectively have constituted an "enterprise" as that term is defined in 18 U.S.C. §1961 (4), that is a group of business entities and individuals associated in fact, which was engaged in, and the activities of which affected, interstate commerce and foreign commerce. Each defendant partic-ipated in the operation and management of the Enterprise.

4.    The Enterprise functioned as a continuing unit for more than ten (10) years to achieve shared goals through unlawful means including the following: **(a)**  to extort and deceive the plaintiffs; **(b)**  to blackmail and threatened the plaintiffs; **(c)** to intimidate and induce the plaintiffs into paying bribes; **(d)**  to defraud the plaintiffs with inducement; **(e)**  to manipulating the issuance of building permits approvals and zoning board approvals; **(f)** to deceive the plaintiffs by continuous rejections to their plans to build based on planed scheme to provide defected plans and speci-fications that violates the building codes of the City and State.

5.    The Enterprise came into existence not later than 1998 once they took incharge of the City of Union City affairs. Five members comprise the Union City Board of Commissioners and serve in both administrative and legislative capacities.

-45-

Each Commissioner acts as the director of one of the five major department of the City, administrating the daily operations of his or her department. The five major department of Union City government are Public Safety, Revenue and finance, Parks and Public Properties, Public Works, and Public Affairs.

When they act collectively as a Board, the Commissioners conduct the business of the City, such as adopting the City budget and passing resolutions and ordinance. In furtherence of the Enterprise, the participants agreed to form the Zoning Board that was falsely held out to the public as an independent Zoning Board to regulate expansion of the City projects and its size and to insure compliance with its zoning and ordinance.

6.    The Enterprise has pursued a course of conduct of deceit and misrepresentation and conspiracy to defraud the plaintiffs and the Public, to withhold from the plaintiffs and the Public facts material to the decision to grant expansion of certain construction projects, to promote and maintains approvals of construction projects that in conflict and violate the City Ordinance and State laws. The profits derived therefrom, as well as to shield themselves from public, judical, and governmental scrutiny all bribes, extorted money, threats, blackmailing, that was done on one to one basis and in form of cash only, and in form of forcing to award certain construction contracts to be performed by an associates of the Enterprise. The fraudulent, misleading and unlawful efforts of the Enterprise have continued from its inception

-46-

to the present and threaten to continue into the future.

7.    The participants in this Enterprise have repeatedly utilized their positions with the City to grant special resolutions by the Zoning Board, that in conflict with City Ordinance and the public interest. The participants in the Enterprise have made numerous public statements through the mail and in broadcasts and other media, and other public appearances as a part of a concerted and coordinated campaign to reaffirm their promises to the Citizens of Union City in working to the best interest of the City.

Defendants and their co-conspirators used the Enterprise to make these material fraudulent representation to induce the plaintiffs acceptance of their extortion tactics, fraudulent misrepresentation, to avoid Civil Liability, and to conceal their efforts to extort and confuse the facts about the building approvals and the alleged defects in the construction design and its structure.

8.    The participants in the Enterprise have not disclosed, and have denied, contrary to facts, that plans and specifications submitted by co-conspirators were a boiler-plate plans  that does not belong to this project rather than it was used on other project in different City and different zoning requirements.  The submitted plans were in fact belong to a project in the City of Hoboken for different project and different use.

9.    The formation, existence, and actions of the Enterprise were essential to the success of the campaign of deceit, extortion,

-47-

concealment, and misinformation. The constituent members of the Enterprise were aware that, unless they agreed to act and acted as an enterprise, their revenues of bribes, extortions, and free meals ect., would substantially decrease, and accordingly, the profits of passing unlawful resolutions to build more projects, more construction contracts would substantially diminished.

10.   At all relevant times, the Enterprise has existed separate and apart from defendant's racketeering acts and their conspiracy to commit such acts. The Enterprise has an ascertainable structure and purpose beyond the scope and commission of defendants' predicate acts. It has consensual decision making structure that is used to grant Zoning variances, contradicts city ordinance and the truth about consequences in granting such unlawful zoning variances, and otherwise further defendants' fraudulent scheme.

11.   In order to further the conspiracy and as part of their Enterprise that was engaged in a pattern of racketeering activity, defendants formed an alliances of Architiects, Builders, attorneys, and construction consultants. Each of these organizations furthered the goals of the Enterprise in numerous ways:

a)   They served as a principle channel of communication among defendants to insure that plaintiffs continue to pay bribes, extort money, and awarding forced contracts of any and all projects the zoning board approved or on going within the City boundaries.

b)   They served to provide a uniform voice to propagate defendants' and their co-conspirators' false and misleading promises to the plaintiffs.

-48-

**c)**   They provided an "independent" front for defendant's
activities, Empiretech Construction Associate Inc.,
Empiretech Consulting Associate Inc., Abbas Shah,
P.E., and Conni Younis, Jose Izquierdo, and JAI,
Architects LLC., Wifredo J. Ortiz II, Esq., and
Gregg F. Paster, Esq., Ronald Abraham, Esq.,among
all other defendants listed in the complaint. For
example was used by defendants to claim falsely that
building design was faulty and defective so the
plaintiffs will continue to pay bribes and be extorted
among other benifets.

**d)**   They were mechanisims for enforcing the conspiracy
and ensuring that all defendants continued to
participate in the Enterprise. The defendants and/or
their alliance were in constant contact with each other
since the begining of the project until it was finally
halted and forecloused on by the lenders.

12.   At all times, Empiretech, Jose Izquierdo, John Medina,
and all listed defendants in this complaint were active members.
with the City of Union City officials in recruiting new projects
and controlling the success of each project. In order for the
conspiracy to continue the defendants continue to mislead and
misinform the plaintiffs as to defects in the design of the
building and prolonged the permit approvals which they were able
to accomplished each time.

-49-

13.    Defendants, through their building department and its other agents, took an active role in controlling the success of the project (1208-1210 Summit Ave. Union City), so long the project remained incomplete, bribes and extorted money will keep forthcoming. The building department through its director Martin Martinetti, controlled the permits approvals.

14.    The City of Union City, was created since 1930s, and it had a Mayor and Counsel form of Government, Union City Municipal Government has been a non-partisan, Commission of government. Democrats have dominated the Citys' political make-up, as they have throughout Hudson County. All defendants had roots to the notoriously corrupt Hudson County, New Jersey.

15.    The defendants exercised control over the zoning board and variances approvals and had direct administrative control over issuing zoning approvals, and building permits, at least since 1998 until present.

16.    In furtherance of their common goals, including extortion and bribes, false billing, fraudulent concealment, and continue to interaction as controlling participants on the boards, zoning building and other structures within the City, the defendants and others have constituted an association-in-fact enterprise as defined in Title 18 U.S.C. §1961 (4).

17.    On information and belief, by frequent and continuous communications among, and coordinated activities of, defendants and their agents that continue to the present day, and defendants and others continue to constitute an association-in-fact enterprise as defined in 18 U.S.C. §1961 (4).

## C O U N T   T W O

C.          **Violation of Title 18 U.S.C. §1962(d);
            Conspiracy to Violate 18 U.S.C. §1962 (c)**

            **Conspiracy To Conduct The Affairs Of The
            Enterprise Through A Pattern Of
            Racketeering Activity.**

18.    The plaintiffs realleges and incorporates by reference in this Count the allegations contained in Section I, through **IV.**, and in Section **VI B.**, in the complaint, as if they are fully setforth herein.

19.    From at least the early 1998, up to and including the date of the filing of this complaint, in the District of New Jersey and elsewhere, defendants listed in this complaint, and others known and unknown, being persons employed by and associated with the Enterprise, described in Section **VI B.**, did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree together with each other, and with others whose names are both known and unknown, to conduct and participate, directly and indirectly, in the conduct of the affairs of the aforementioned Enterprise, which was engaged in, and the activities of which affected, interstate and foreign Commerce, through a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. §1341, §1343, §1951, in violation of 18 U.S.C.§1962(d).

20.    **The Enterprise Manner and Means:**
Section **VI. B.** above, is incorporated by reference and realleged as is fully setforth herein.

-51-

21.   Each defendant agreed that at least two acts of racketeering activity would be committed by a member of the conspiracy in furtherance of the conduct of the Enterprise. It was part of the conspiracy that defendants and their co-conspirators would commit numerous acts of racketeering activity in the conduct of the affairs of the Enterprise, including, but not limited to, the acts of racketeering set forth in this complaint, in the District of New Jersey and elsewhere.

D.              The Pattern Of Racketeering Activity

          Racketeering Acts Related To The Extortion
              And Mail Fraud, Wire Fraud Schemes

22.   Racketeering Acts Paragraphs 1 through     , realleged as a part of each Racketeering acts relating to the extortion, mail fraud, wire fraud, black mail, threats, intimidation set forth in this Complaint.

a)   From at least as early 1998, and continuing until the time of filing of this complaint, in the District of New Jersey and elsewhere, defendants and others known and unknown did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and obtain money and property from, the plaintiffs and other members of the public by means of extortion, bribery, blackmail, threats, and by means of material false and fraudulent pretenses, representations, and promises, and omissions of material facts, knowing that the pretenses , representations, and promises, were false when made.

-52-

**b)** It was part of said scheme and artifice that the plaintiffs will be forced to pay money in return for the zoning approvals and building permits approvals, and be extorted of money and property throughout the project.

**c)** It was further part of said scheme and artifice that defendants and their co-conspirators would and did maintain money flow from the plaintiffs, by concealing, and suppressing material information regarding the permit approvals, and the existing defects in the building design deliberately made by the co-conspirators designers and architects and contractors. They had the ability to manipulate the plaintiffs to continued be extorted and money flow keep coming.

**d)** It was further of said scheme and artifice that, in order to conceal the bribes, and extortion, and unlawful gains, that the defendants to receive their unlawful money in Cash only from the plaintiffs.

**e)** It was further part of said scheme and artifice that defendants and their co-conspirators would seek to impair, impede, and defeat the plaintiff from completion of said project, and defeat parties in litigation from succeed in their underlying civil claims, so the plaintiffs will ultimately lose the project, and did attempt to prevent the plaintiffs from uncovering their unlawful activities.

**f)** It was further part of said scheme and artifice that defendants' communications directed toward the plaintiffs with John Medina, and that all money exchanged be through him.

-54-

g)    It was further part of said scheme and artifice that defendants would take and receive and cause to be taken and received from the mails concerning permit approvals violations, rejections, and municipal citations.

h)    It was further part of said scheme and artifice that defendants and their co-conspirators would mail and otherwise distribute other matters of rejections, notices, citations issued by the police and building department.

i)    It was further part of said scheme and artifice that defendants and their co-conspirators would and did misrepresent, conceal, and hide and cause to be misrepresented, concealed, and hidden, the purpose of, and acts done in furtherance of, the scheme to defraud.

j)    It was a further part of said scheme and artifice that defendants and their co-conspirators would and did misrepresent conceal, and hide and cause to be misrepresented, facts to the reliability and accuracy of the plans submitted by their co-conspirators, when in fact the plans and specifications were made for another job for the purpose of confsion and misleading the plaintiffs and continue to pay fees to correct and bribes.

k)    It was a further part of said scheme and artifice, and in furtherance thereof, that defendants would and did communicate with each others in person, by mail and by telephone and other interstate wire facilities, regarding the bribes, extortion,

-55-

blackmail, fraud and all listed acts listed within this Complaint.

l)   For the purpose of executing and attempting to execute the scheme and artifice described herein, defendants and their co-conspirators would and did knowingly and cause to be placed in any Post Office or authorized depository for mail matter, matters and things to be sent and delivered by the United States Postal Services, took and received therefrom such matters and things; and knowingly caused to be delivered by mail according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, in violation of 18 U.S.C. §1341, including, but not limited to, the instances set forth in Racketeering Acts, listed in this compalint I, through **IV., V., VI.,A,B,C,D,**.

m)   For purpose of executing and attempting to execute that scheme and artifice, defendants and their co-conspirators would and did knowingly transmit and cause to be transmitted in inter-state and foreign Commerce by means of wire communication, collectively "transmissions" in violation of 18 U.S.C. §1343, including, but not limited to, the transmissions set forth in Racketeering Acts, I, through IV, V., VI, A,B,C,D, .

23.   Racketeering Acts appearing in this Complaint are realleged and incorporated by reference into the complaint as if they fully set forth herein.

-56-

## C O U N T   T H R E E

## S T A T E   R I C O   -   A L L   D E F E N D A N T S

1.   Plaintiffs Adip J. Tadros, Norma Tadros, and Genesis One Inc., realleges and incorporate by reference in this Count the allegations contained in Section I, through VI, V., VI. B,C,D,. above in this complaint as if fully set forth herein.

2.   From in or about early 1998 to at least the filing date of this complaint, the defendants listed in Section IV, of this Complaint conducted or participated, directly or indirectly, in the conduct of the affairs of Union City through a pattern of racketeering activity, in violation of N.J.S.A. 2C:41-2(c) and 2C:2-6.

3.   The racketeering activity consisted of violations of the federal mail fraud and wire fraud, extortion and intimidation, as described above, as well as violations of N.J.S.A. 2C:20-3, N.J.S.A. 2C:21-4(b), N.J.S.A. 2C:21-9, 2C:21-10, and 2C:20-15, among others, all as described above.

4.   Plaintiffs has been damaged in its business and property by reasons of the violations of N.J.S.A. 2C:41-2(c) committed by these defendants, in violation of N.J.S.A. 2C:41-4(c).   WHEREFORE, plaintiffs demands judgment against each and every defendnat, awarding plaintiffs treble damages, pre and post-judgment interest, attorney fees and cost of investigation and suit, and such other and further relief as may be found to be just and proper in the amount of Twenty Five Million Dollars, $25,000,000.

## C O U N T   F O U R

### STATE RICO CONSPIRACY- ALL DEFENDANTS

1.   Plaintiffs realleges and incorporate by reference in
this Count the allegations contained in Section IV, and VI, A,
B,C,D, above in this complaint as if fully set forth herein.

2.   From in or about early 1998, to at least the filing
date of this complaint, the defendants listed in Section I,of
this complaint conspired to violate the provisions of N.J.S.A.
2C:41-2 by agreeing with each others to conduct or participate,
directly or indirectly, the conduct of the affairs of the City
of Union City through a pattern of racketeering activity, in
violation of N.J.S.A. 2C:41-2(d).

3.   The racketeering activity consisted of the violations
of the federal extortion statute, mail fraud, wire farud and
all as described within this complaint.

4.   Plaintiffs has been damaged in its business and property
by reason of the violation of N.J.S.A. 2C:41-2(d) committed by
these defendants, in violation of N.J.S.A. 2C:41-4(c).

WHEREFORE, the plaintiffs demands judgment against all listed
defendants within the Compalint awarding plaintiffs treble damages,
pre and post-judgment interest, attorneys' fees and costs of
investigation and suit, and such other and further relief as may
be found to be just and proper in the amount of Twenty Five
Million Dollars ($25,000,000.).

## C O U N T   F I V E

### DEFENDANTS' LIABILITY FOR VIOLATION OF STATE CONSUMER PROTECTION STATUTES

### ( Unfair, Unconscionable, and Deceptive Acts or Practices)

1.    In the State of New Jersey and the District of New Jersey have consumer protection statutes that prohibit unfair, unconscionable, deseptive and misleading trade practices directed toward consumers, and private consumers may recover damages for conduct that violates these statutes.N.J. Stat. Ann §56:8-2 et seq.

2.    The conduct of defendants and their co-conspirators, as set forth in this complaint, violated their duty imposed upon them by the above-cited statutes to refrain from engaging in unfair, deceptive, and unconscionable trade practices. In particular, the knowingly fraudulent misrepresentations, fraudulent omissions, and fraudulent concealment of material facts described in Section IV, V, VI, : of this complaint, had the capacity, tendency, or effect of deceiving or misleading consumers and constituted unfair, deceptive, and unconscionable trade practices for which defendants were and are subject to tort liability under the above-cited statute.

WHEREFORE, plaintiffs demands judgment against each of the defendants listed in this complaint, awarding plaintiffs treble damages, pre and post-judgment interest, attorney fees and cost of investigation and suit,

-59-

and such other and further relief as may be found to be just
and proper in the amount of Twenty Five Million Dollars,
($25,000,000.00).

## C O U N T   S I X

### Violation Of 42 U.S.C. §1983, Bivens Claim

1.    The plaintiffs re-alleges and incorporate by reference in this complaint the allegations contained in Sections I, IV, V., and VI., above as if they were fully set forth herein.

2.    At all times material to the events described herein, the defendants listed in ¶4, ¶5, ¶6, ¶7, ¶8, ¶9, ¶10, ¶11, ¶12, ¶13, ¶14, ¶15, ¶16, ¶17, ¶18, ¶19, ¶20, ¶21, ¶22, ¶23, known and unknown defendants (collectively the City Officials), each acted under color of State Law and liable under Bivens vs. Six Unknown named Agents of Fed. Bureau of Narcotics, 403 U.S. 388,398 n.1., S.Ct. 1999, 29 L.Ed.2d 619 (1971).

3.    By their acts and omissions of bribery, extortion, blackmail, threatening, fraud, fraud in the inducement, and all Sections I,IV,V,VI, of this complaint failed to take obvious steps to address the implications of their acts, thus exhibiting deliberate indifference to plaintiff's serious economic injuries and Infliction of Emotional Distress.

4.    As a result of each defendant's acts and omissions, the plaintiffs had suffered and will in the future suffer economic injuries that destroyed the plaintiffs entire life saving and their family as well.

WHEREFORE, the plaintiffs demands judgment against defendants City Officials listed in this Complaint known and unknown oersons awarding the plaintiffs all damages which were proximately caused by the aforesaid illegal acts and omissions, punitive damages, pre and post-judgment interest, cost of suit, treble damages, and such other and further relief as may be found to be just and proper.

## C O U N T   S E V E N

### Conspiracy To Violate Civil Rights Under

### 42 U.S.C. §1985

1.    The plaintiffs re-alleges and incorporate by reference in this complaint the allegations contained in Section I.,IV.,V., VI., above as if they were fully set forth herein.

2.    At all times material to the events described herein the defendants listed in ¶4 through ¶23, known and unknown persons to the plaintiffs, each conspired with each others to violated Federally protected Civil Rights in violation of §1985.

3.    By their acts and omissions listed in Section VI. in this complaint, they failed to take obvious steps to protect the implications of their acts, thus exhibiting serious economic injuries and emotional distress.

4.    As a result of each defendant's acts the plaintiffs had suffered and will in the future suffer severe economic loses and injuries that had left the plaintiffs financially destroyed and emotionally distressed.

WHEREFORE, the plaintiffs demands judgment against defendants City Officials awarding the plaintiffs all damages which were proximately caused by the aforesaid conspiracy of the illegal acts and omissions, treble damages, pre and post-judgment interest cost of suit, and such other and further relief as may be found to be just and proper in the amount of Twenty Five Million Dollars ($25,000,000.00).

-63-

## C O U N T   E I G H T

### Defendants Liability Under The New Jersey
### Tort Claim Act

1.   A fundamental principle  of State law that a State Agencies must follow its own rules. Where the rights of individuals are affected, it is incumbent upon agencies/Towns/Cities and municipalities to follow their own policies. It is well settled that validly issued administrative regulations have the force and effect of law.

2.   The duty of care owed by the State and its agencies and municipalities is governed and protected by the New Jersey Tort Claim Act N.J.S.A. 59:8-1, et seq.

3.   The plaintiffs re-alleges and incorporate by reference in this complaint the allegations contained in this complaint against all defendants City Officials of Union City and Union City it self as if they were fully set forth herein.

4.   By their acts and omissions in improperly denied and prolonged the approval of plaintiff's project and their failure to act with due diligence in issuing the permits had caused the plaintiffs severe economic injuries actionable under the New Jersey Tort Claim Act.

5.   As a result of the negligence and lack of due diligence the plaintiffs suffered severe economic injuries that destroyed plaintiff's financial resources and lost the building and all of their life savings.

WHEREFORE, the plaintiffs demands judgment against the
State of New Jersey awarding the plaintiffs all damages resulted
from the negligence and duty of care owed to the plaintiffs as
the victims of this negliegnce including pre and post-judgment
interest, cost of suit, legal fees, investigation costs and
such other and further relief as may be found to be just and proper
in the amount of Fifty Million Dollars ($50,000,000.00).

## C O U N T   N I N E

### Billing Fraud- All Attorney Defendants

1.   Plaintiffs re-alleges and incorporate by reference in this count the allegations contained against all defendants- Attorneys Gregg F. Paster, Esq., Wifredo J. Ortiz II, Esq., Ronald Abraham, Esq., Jay B. Zucker Esq., and Zucker & Kwestel LLP., as if fully set forth herein.(collectively attorneys defendants).

2.   From as early as 2003, until the filing of this complaint the defendants attorneys acts and omission constitute billing fraud under the NJ Statutes of billing fraud. The acts of false billing while the case was dismissed by the State Court and conceal material facts of the dismissal to the plaintiffs is actionable under the billing fraud Statute.

3.   As a result of the billing fraud the plaintiffs suffered severe economic damages not limited to emotional distress that will affect their lifes for years to come.

WHEREFORE, the plaintiffs demands judgment against defendant Gregg F. Paster Esq., Wilfredo J. Ortiz II, Esq., Ronald Abraham, Esq., Jay B. Zucker Esq., and Jay B. Zucker & Kwestel LLP., in the amount of One Million Dollars ($1,000,000.00) awarding the plaintiffs treble damages, pre and post-judgment interest, attorneys fees, and cost of investigation and suit, and such other and further relief as may be found to be just and proper.

-66-

## C O U N T   T E N

### Theft By Conversion-All Defendants

1.    The plaintiffs re-alleges and incorporate as if more
fully set forth herein the allegations contained in Sections IV.,
V., VI., of this Compalint.

2.    All defendants were acting in their capacity did use
and covert for his own use and benefit assets belonging to the
plaintiffs, in taking Cash for Campaigning contributions without
issuing tickets or receipts, extortion money, free meals and
free Dry-Cleaning services bribes, receiving 300 to 500 meals
without paying for it and receiving legal fees for work not being
performed, and proceeds of trust account that was never accounted
for until this filing of this compalint.

3.    As a direct and proximate cause the acts and theft of
plaintiffs assets had caused severe economic injuries, severe
emotional distress in loosing all of their assets.

WHEREFORE, the plaintiffs demands judgment against all of
the defendants awarding them pre and post judgment interest, costs
of suit, punitive damages, costs of suit, and such other and
further relief which may be found to be just and proper in the
amount of One Million Dollars ($1,000,000.00) each defenadnt.

-67-

## C O U N T   E L E V E N

### Unjust Enrichment

1.   The plaintiffs re-alleges and incorporate as if more fully set forth herein the allegations of Sections IV,V,VI, of this complaint.

2.   The conduct of each and every defendant, described above constitutes extortion, bribery,fraud,deceit, and misre-presentation in taking assets that belongs to others. The defendants either directly or indirectly, caused funds to be diverted/transferred from plaintiff's assets to themselves and or others.

3.   It is inherently unfair that proceeds generated from extorting, defrauding the plaintiffs are retained by and used to personally benefit the defendants who caused the loss.

4.   As a direct and proximate result of the defendants' retention of the proceeds, the plaintiffs has been diminished and , under the circumstances, equity dictates that all such proceeds retained and assets acquired with such proceeds be returned to the plaintiffs.

WHEREFORE, for the above and foregoing reasons, plaintiffs prays for money judgment in the amounts of proceeds transferred to the defendants, their entities, either directly or indirectly, together with interest thereon from the date of the transfers.

-68-

The plaintiffs further prays for applicable pre and post-judgment interest, costs incurred in the prosecution of this case in the amount of Two Million Dollars ($2,000,000.00) and cost of suit, investigation, attorney fees and such other further relief as may be just and proper under the circumstances.

## C O U N T   T W E L V E

### Common Law Fraud- All Defendants

1.   Plaintiffs re-alleges and incorporate by reference as if more fully set forth herein the allegations of Sections IV., V., VI., of this Compalint.

2.   The conduct of each and every defendant, described above, constitute common law fraud in that each defendant has made misrepresentations to the plaintiffs of past or presently existing facts, with knowledge that such representations were false, and with the intention that plaintiffs rely upon the misrepresentations to its detriment.

3.   The plaintiffs justifiably relied upon the misrepre- sentations of each of the defendants by, among other things, paying more Architectual and Engineering fees, attorney fees and incurring unwarranted construction fees, including interest on the loans, taxes, ect, which greatly injured the palintiffs severely.

4.   As a result of the foregoing fraudulent conduct, the plaintiffs has suffered and will continue to suffer substantial harm now and future.

WHEREFORE, plaintiffs demands judgment against all defendants awarding all damages which were proximately caused by the aforesaid fraudulent conduct, punitive damages, pre and post-judgment interest, cost of suit in the amount of Twenty Five Million Dollars, ($25,000,000.00).

-70-

## C O U N T   T H I R T E E N

### Conspiracy to Commit Common Law Fraud
### All Defendants

1.   The plaintiffs re-alleges and incorporates by reference as if more fully set forth herein the allegations of Sections IV, V., VI., and Count One, Two, of this complaint.

2.   from in or about 2008 to in or about late 2009, the defendants did combine, conspire, confederate and agree with each other or others to commit common law fraud upon plaintiffs.

3.   It was part of this conspiracy that each and every defendant, described above, agreed with others to make misrepresentations of material facts to the plaintiffs of past or presently existing facts, with knowledge that such representations were false, and with the intention that the plaintiffs rely upon the misrepresentations to its detriment.

4.   The plaintiffs justifiably relied upon the misrepresentations of each of the defendants by, among other things, continue paying bribes, extortions, Architects, Engineers, and construction workers and contractors, attorney fees, interest on loans and taxes all obtained through their conspiracy to defraud.

5. As a result of the foregoing conspiracy to defraud, the plaintiffs has and will continue to suffer substantial economic injuries will be felt through years to come.

WHEREFORE, plaintiffs demands judgment against defendants awarding them all damages which were proximately caused by the aforesaid fraudulent conduct, punitive damages, pre and post-judgment interest, punitive damages, cost of suit, and such other and further relief as may be found to be just and proper in the amount of Twenty Five Million Dollars ($25,000,000.00).

## C O U N T   F O U R T E E N

### Negligent Misrepresentations- All Defendants

1.    The plaintiffs re-alleges and incorporates by reference as if more fully set forth herein the allegations in Sections IV., V., VI., of this Complaint.

2.    The defendants negligently made misrepresentations of material facts to the plaintiffs of past or presently existing facts, with the intention that the plaintiffs rely upon the misrepresentations to its detriment.

3.    The plaintiffs justifiably relied upon the negligent misrepresentations made by each of the defendants by, among other things, paying fees, bribes, extortion, Architect fees, Engineering fees, Construction work, attorney fees, taxes, material, ect based on their negligent misrepresentations.

4.    As a result of the foregoing, the plaintiffs has suffered and will continue to suffer substantial harm.

WHEREFORE, the Plaintiffs demands judgment against defendants awarding the plaintiffs all damages which were proximately caused by these defendants' negligent misrepresentations, pre and post-judgment interest, cost of suit, and such other and further relief as may be found to be just and proper in the amount of Twenty Five Million Dollars ($25,000,000.00).

## C O U N T   F I F T E E N

### Breach Of Fiduciary Duties   All Defendants

1.    The plaintiffs re-alleges and incorporates by reference as if more fully set forth herein the allegations of Section IV, V.,VI.,of this complaint.

2.    As attorneys of the plaintiffs, defendants attorneys Gregg F. Paster, Wifredo J. Ortiz II, Esq., Ronald Abraham, Esq., Rose Tubito, Esq., David M. Watkins, Esq., had a fiduciary relationship with their client, and owed the plaintiffs a duty of honesty and undivided loyalty in the performance of their respective duties. As attorneys the plaintiffs justifiably relied upon their advise and recommendations concerning financial matters and business matters that affected the plaintiffs business and their law suits, the plaintiffs had a justifiable expectation that these defendants, as their attorneys, would act prudently to the best interest of the plaintiffs.

3.    Defendants attorneys breached their fiduciary obligations and their duty of loyalty to the plaintiffs by engaging in the conduct set forth in Sections IV,V,VI, of this complaint, including but not limited to their failure to disclose material facts concerning certain events and their relationship with parties in conflict with the plaintiffs. Their failure to disclose the true status of the law suits filed in Hudson County to recover damages from Empiretech, and Union City officials.

-74-

The defendants attorneys failed to disclose their conflict of interest in various transactions, and submission of false and misleading documentation to the plaintiffs so the billing fraud will continue.

4.    As a direct and proximate result of the breach of fiduciary duty of honesty and loyalty by defendants attorneys the plaintiffs has suffered and will continue to suffer substantial harm will be felt for years to come.

WHEREFORE, plaintiffs demands judgment against the defendants attorney awarding the plaintiffs damages which were proximately caused by the defendants attorney's breach of their fiduciary duty of honesty and loyalty, pre and post-judgment interest, costs of suit, in the amount of Twenty Five Million Dollars ($25,000,000.00), and such other and further relief which may be found to be just and proper.

### C O U N T   S I X T E E N

### Breach of Fiduciary Duty of Care- Defendants
### Union City Officials And Jay B. Zucker, 54 Inc. &
### Jay B. Zucker & Kwestel

1.   Plaintiffs re-alleges and incorporates by reference as if more fully set forth herein the allegations of Sections IV., V., VI., of this Complaint.

2.   As loan officers, attorneys, directors of 54 Inc., and City officials owed a fiduciary duty of care to the plaintiffs to safeguard the interests of the plaintiffs and to act in the best interests of the plaintiffs and public.

3.   Defendants City Official of Union City breached their duty of care to the plaintiffs by failing to discharge their duties in a reasonable manner and with care and skill that could be expected from other reasonably prudent building departments and Townships in their positions under similar circumstances. The defendants City Officials failed to review properly the plans submitted by Empiretech, Construction when the defects were very obvious that led to torn down the entire structure.

Defendants City officials failed to approve the plans in a manner that all building departments are a custom to and not in a manner that was designed to confuse the plaintiffs and exhaust all their financial resources.

4.   The plaintiffs justifiably relied upon the reports and advise provided by the defendants City Officials in making decisions concerning changes of contractors and architects to

-76-

appease City Officials in choosing parties that is close with
the building department and the Mayor's office.

5.   As a result of these defendants' breach of fiduciary duty
of care, the plaintiffs has and will continue to suffer economic
harm and monetary loss.

6.   Defendants Jay B. Zucker, Esq., Zucker & Kwestel, and 54
Inc., breached their duty of care to the plaintiffs, they owed
a fiduciary duty of care to the plaintiffs to safe guard the
interest of plaintiffs and to act within the Truth Lending Act
policies and regulations Title 15 U.S.C. §1601 et. seq.

Defendants breached their duty of care to the plaintiffs by
failing to discharge their duties in a reasonable manner and with
care that could be expected from other reasonably prudent lending
entities in similar circumstances. They failed to insure that
plans and specifications are complete and complied with both
City and State Codes, they also failed to insure that building
permits were approved prior to paying on the loan. Had they
reviewed the plans properly they would have discovered the defect
in the building design.

Furthermore, the defendants Zucker, Zucker & Kwestel and
54 Inc., misinformed the plaintiffs concerning additional money
will be granted to complete the project knowingly they were aware
that the amount they lend was insufficient to complete the
project.

-77-

7.   The plaintiffs justifiably relied upon the promises and advise provided by the defendants concerning plans review and increase in the loan amount once its needed to complete the project.

8.   As a result of these defendants' breach of fiduciary duty of care, the plaintiffs has and will continue to suffer harm and monetary loss.

WHEREFORE, the plaintiffs demands judgment against all of the defendants listed in this Count Sixteen awarding the plaintiffs all damages which were proximately caused by the defendants' breach of their fiduciary duty of care, in the amount of Twenty Five Million Dollars ($25,000,000.00.), together with pre and post-judgment interest, costs of suit, and such other and further relief which may be found to be just and proper.

## C O U N T   S E V E N T E E N

### Commercial Bribery - Defendants City Officials
### Jose Izquierdo, J.D.P. Construction, Juan de la Paz

1.   Plaintiffs re-alleges and incorporates by reference as if more fully set forth herein the allegations of Sections IV.,V.,VI., of this Complaint.

2.   The solicitation, acceptance of or agreement by defendants all City Officials to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which each of them was subject as agent, officer, director and/or manager of the City of Union City was unlawful and constitutes commercial bribery.

3.   Pursuant to law, plaintiff is entitled to obtain from defendants the money paid to each of them or the value of any benefit conferred upon either to them by any third party to influence either of their decisions as an agent, officer, director or manager of the City of Union City.

WHEREFORE, plaintiffs demands judgment against the defendants listed in this Count Seventeen awarding the plaintiffs all damages which were proximately caused by the defendants' wrongful conduct, together with punitive damages, pre and post judgment interest, cost of suit, and such other and further relief as may be found to be just and proper.

## C O U N T   E I G H T E E N

### Violation of Truth Lending Act Title 15 U.S.C. §1601et.seq.

### Defendants Jay B. Zucker, Zucker & Kwestel & 54 Inc.

1.    The plaintiffs re-alleges and incorporates by reference as if more fully set forth the allegations of paragraphs ¶36, ¶37,¶38, ¶39, ¶152 through ¶170 of this Complaint.

2.    At all times relevant herein, the defendants listed in this Count Eighteen had a duty to the plaintiffs to perform their duties and obligations as its mandated by the Truth Lending Act requirement §1601 et.seq., in a reasonable manner and with the care and skill that could be expected from other lenders under similar circumstances.

3.    Among other acts, defendants negligently failed to carry federally regulated loans in a manner consistent with the practices and policies within the State of New Jersey, and in violations of the banking department of the State as well the federal regulations. They made materially false promises to the plaintiffs that they will be receiving additional money to complete the project once the funds are exhausted and the project halfway through.

The defendants acted with conflict of interest when they were acting as legal advocates and loan officers for the same entity, by pretending to the plaintiffs they were independents from the lending company.

-80-

The defendants failed to review plans and specifications that the plaintiff received prior to funding the project, had they review such the outcome would be different and the plaintiff would not have torn down a building that was defective in its design and unsafe.

4.     The plaintiffs justifiably relied upon the defendants' approvals of the project and their promises to increase funding in the event the building needed more funding. The defendants had approved and appraised the building to be worth in excess of fifteen million dollars and funding more money will not be an issue under any circumstances.

5.     As a result of these violations the plaintiffs has and will continue to suffer harm and monetary loss.

WHEREFORE, the plaintiffs demands judgment against the defendants listed in this count Eighteen awarding plaintiffs all damages which were proximately caused by the defendants' violation of the Truth Lending Act, and the Fair Credit Act in the amount of twenty five million dollars ($25,000,000.00) together with pre and post judgment interest, costs of suit, and legal fees and such other and further relief which may be found to be just and proper.

## C O U N T   N I N E T E E N

### Legal Malpractice - All Attorneys Defendants

1.    Plaintiffs re-alleges and incorporate by reference as
if more fully set forth herein the allegations of Sections IV.,
V.,VI., of this complaint.

2.    Defendants Gregg F. Paster, Esq., Wifredo J. Ortiz II,
Esq., Ronald Abraham Esq., Rose Tubito, Esq., Jose Izquierdo,
AIA, and  Esq., David M. Watkins, Esq., and their law firms were
retained as attorneys for the plaintiffs to represent the plaintiffs'
interests as either closing attorneys or review attorneys with
respect to the financing provided by 54 Inc., and the legal
affairs of law suits against multiple defendants based on design
defects and engineering malpractice as well as Architicural
malpractice. The defendants committed legal malpractice during the
course of their representation of the plaintiffs by performing
their legal services in a reckless, careless and negligent manner
and failing to comply with the New Jersey Rules of Professional
Conduct, as described in detail above in the preceding paragraphs
to this complaint.

3.    The defendants violated various provisions of the Rules
of Professional Conduct ("RPC"), including, but not limited to
RPC 1.6, RPC 1.16, RPC 4.1 RPC 1.7. Also during real estate
transaction closing where Trust account fund was misappropriated
and used for the defendants personal use.

-82-

false billing and misinformation as to material facts could have prevented the loss of property and saved the plaintiffs millions of dollars in legal fees and wasted money in bribes and extortion.

4. Attorneys Defendants were acting in conflict of interest adverse to the plaintiffs, they were representing clients that City Officials and close associate with the City officials while they pretending to represent the plaintiffs' interest.

5. Attorneys defendants were aciting under clear conflict of interest while representing the plaintiffs and seeking work with the adverse party.

6. Attorney Ronald Abraham, was acting as an attorney while he stole the plaintiff's trust fund accounts and declined to issue any accounting to the funds withheld in the trucst accounts.

7. Attorney Rose Tubito, and David M. Watkins, undertook legal respresentation and at the same time seeked legal work for the City Mayor's close associate, which was the sole cause for the abandoned of plaintiff's lawu suits against attorneys and the City of Union City.

8. As a result of the aforesaid malpractice by these defendants, plaintiffs has suffered and will continue tosuffer substantial harm.

WHEREFORE, the plaintiff demands judgment against the attorney defendants in the amount of twenty five million dollars (25,000,000.) with pre and post-judgment interest and other proper relief.

## C O U N T   T W E N T Y

### Violation of the Equal Right Protection Act Under The
### Fifth Amendment to The U.S. Constitutions.
### All- City Officials & City Of Union City

1.   The Plaintiffs re-alleges and incorporates by reference as if more fully set forth herein the allegations of Sections IV., V., VI., of this Complaint.

2.   At all times relevant to this complaint the defendants City Officials was acting under color of State law during the period in which the plaintiffs was subjected to a pattern of systematic and indivious discrimination by the defendants in this count twenty due to their ethnicity and/or National Origin.

3.   The pattern of systematic and indivious discrimination inflicted upon the plaintiffs was not imposed as the result of any compelling concerns or reasons, but rather, was done for the sake of discrimination against plaintiffs based on their ethnicity and/or origin.

4.   Plaintiffs has suffered damages as a direct result of defendants' violations of his specific Constitutional right to equal protection under the Fifth Amendment to the U.S. Const.

5.   As a direct and proximate result of the violations the plaintiffs suffered severe economic losses and emotional distress.

6.   Plaintiffs seeks judgment against the defendants in the amount of twenty Five Million Dollars ($25,000,000.00).

-84-

## J U R Y   T R I A L   D E M A N D

Plaintiffs hereby demands a trial by jury as to all issues so triable.

## P R A Y E R   F O R   R E L I E F

WHEREFORE, the Plaintiffs Adip Tadros, Norma Tadros, request that this Court:

(1)   Enter judgment in favor of plaintiffs against defendants on each of the Counts herein;

(2)   Award plaintiffs compensatory damages on each of the Counts herein;

(3)   Award plaintiffs punitive damages on each Count herein;

(4)   Award plaintiffs their reasonable cost and disbursements, including attorneys' fees, pursuant to 28 USC §2412; and;

(5)   Grant plaintiffs such other and further relief as is just and proper.

On May 25, 2010

x _Adip Tadros_

Adip J. Tadros,
Norma Tadros

146 Union Avenue
Rutherford, NJ 07070

(201) 421 8998

-85-

## C E R T I F I C A T E   O F   S E R V I C E

I hereby Certify that One true and correct copy of this Complaint has been served upon the following defendants in this complaint in accordance with Rule 4 Fed.R.Civ.P.through a service process and/or Certified U.S. Mail.

THE CITY OF UNION CITY NEW JERSEY
3715 Palisade Avenue
Union City, NJ 07087


BRIAN P. STACK,
THE MAYOR OF UNION CITY NEW JERSEY
3715 Palisade Avenue
Union City, NJ 0708


JOHN MEDINA
1601 74th Street
North Bergen, NJ 07047


MARTIN MARTINETTI
Building Official
City Of Union City
3715 Palisade Avenue
Union City, NJ 07087


FRANCO ZANDARDELLI
City Of Union City
Union City, NJ 0708


LUCIO FERNANDEZ,
DEPT. OF PUBLIC AFFAIRS COMMISSIONER
City Of Union City
3715 Palisade Avenue
Union City, NJ 07087


CHRISTOPHER F. IZIZARRY,
DEPT. OF PUBLIC PROPERTY COMMISSIONER
City Of Union City
3715 Palisade Avenue
Union City, NJ 07087

MARYURY A. BAMBINO,
DEPT. OF REVENUE & FINANCE COMMISSIONER
City of Union City
3715 Palisade Avenue
Union City, NJ 07087

ANDRES GARCIA,
CHAIRMAN OF THE CITY OF UNION CITY NEW JERSEY
ZONING BOARD OF ADJUSTMENT
City of Union City
3715 Palisade Avenue
Union City, NJ 07087

MIGUEL ORTIZ,
MEMBER OF THE CITY OF UNION CITY NEW JERSEY
ZONING BOARD OF ADJUSTMENT
City of Union City
3715 Palisade Avenue
Union City, NJ 07087

VICTOR GRULLON,
MEMBER OF THE CITY OF UNION CITY NEW JERSEY
ZONING BOARD OF ADJUSTMENT
City of Union City
3715 Palisade Avenue
Union City, NJ 07087

MARGARITA GUTIERREZ,
MEMBER OF THE CITY OF UNION CITY NEW JERSEY
ZONING BOARD OF ADJUSTMENT
City of Union City
3715 Palisade Avenue
Union City, NJ 07087

DENISE VELEZ,
MEMBER OF THE CITY OF UNION CITY NEW JERSEY
ZONING BOARD OF ADJUSTMENT
City of Union City
3715 Palisade Avenue
Union City, NJ 07087

TILO E. RIVAS,
DEPT. OF PUBLIC WORKS
COMMISSIONER
3715 Palisade Avenue
Union City, NJ 07087

CELINE VALBIVIA,
MEMBER OF ZONING BOARD OF
ADJUSTMENT, UNION CITY
3715 Palisade Avenue
Union City, NJ 07087

JUSTIN MERCADO,
MEMBER OF ZONING BOARD OF
ADJUSTMENT, UNION CITY
3715 Palisade Avenue
Union City, NJ 07087

VINCENT CARUSO,
MEMBER OF ZONING BOARD OF
ADJUSTMENT, UNION CITY
3715 Palisade Avenue
Union City, NJ 07087

CARLOS VELLEJO,
MEMBER OF ZONING BOARD OF
ADJUSTMENT, UNION CITY
3715 Palisade Avenue
Union City, NJ 07087

STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
P.O.BOX 116
TRENTON, NJ 08625

JOSE IZQUIERDO
1508 39th Street
North Bergen, NJ 07047

JAI, ARCHITECTS,LLC.
207 60th Street
WEST NEW YORK, NJ 07093

**EMPIRETECH CONSTRUCTION ASSOCIATE,INC.**
1713 Bergenline Avenue
Union City, NJ 07087


**EMPIRETECH CONSULTING ASSOCIATE INC.**
1713 Bergenline Avenue
Union City, NJ 07087


**ABBAS A. SHAH, P.E.,AIA.**
1713 Bergenline Avenue
Union City, NJ 07087


**CONNI YOUNIS**
1713 Bergenline Avenue
Union City, NJ 07087


**RONALD ABRAHAM, ESQ.**
24 Irving Street, lower floor
Jersey City, NJ 07307


**GREGG F. PASTER, ESQ.**
58 Main Street
Hackensack, NJ 07601


**WILFREDO J. ORTIZ II, ESQ.**
4808 Bergenline Avenue
Union City, NJ 07087


**ORTIZ & PASTER LAW OFFICES**
440 6oth Street
West New York, NJ 07093


**SHARIF EL FAR,P.E.**
917 Marie Court
Franklin Lake, NJ 07205


**ROSE TUBITO, ESQ.**
239 Old Tappan Road
OLd Tappan, NJ 07675


**DAVID M. WATKINS,ESQ.**
285 Closter Dock Road
Closter, NJ 07624

JAY B. ZUCKER, ESQ.
300 Frank W. Burr Boulevard, 2d floor
suite 53
Teaneck, NJ 07666

ZUCKER & KWESTEL LLP.
300 Frank W. Burr Boulevard
2d floor suite 53
Teaneck, NJ 07666

54 Inc.
5600 A. Broadway
Bronx, NY 10463

J.D.P. CONSTRUCTION SERVICES, LLC.
209-60th Street
West New York, NJ 07093

JUAN DE LA PAZ,
209-60 street
West New York, NJ 07093

On May 25, 2010

x _Adip Tadros_

Adip Tadros

-91-